**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRADEBE ENVIRONMENTAL SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 25-cv-12742 ) |
| INDIAN HARBOR INSURANCE COMPANY, | ) JURY DEMANDED ) ) |
| Defendant. | ) ) |

## **COMPLAINT**

Tradebe Environmental Services, LLC ("Tradebe"), by its attorneys, states as follows as its complaint against Defendant Indian Harbor Insurance Company ("Indian Harbor"):

## **NATURE OF THE ACTION**

1. This insurance coverage lawsuit arises from a claim presented by Tradebe under an insurance policy issued to it by Indian Harbor in connection with losses that Tradebe incurred as the consequence of an explosion at a facility operated by Tradebe at 50 Cross Street, Bridgeport, Connecticut (the "Bridgeport Facility"). Indian Harbor does not contest that the claims submitted by Tradebe arising from the explosion at the Bridgeport Facility are within the coverage of the insurance policy that it issued to Tradebe.

2. Through this lawsuit, Tradebe seeks reimbursement from Indian Harbor of the millions of dollars of losses incurred by Tradebe as a consequence of the explosion at the Bridgeport Facility that are due to it under the terms of the insurance contract between Tradebe and Indian Harbor.

1

3. Additionally, Tradebe seeks recovery against Indian Harbor for breach of Indian Harbor's duty of good faith and fair dealing in connection with its investigation and adjustment of the claim arising from the explosion at the Bridgeport Facility.

## THE PARTIES

4. Tradebe is a limited liability company organized under Delaware law, and its sole member is Tradebe Capital Corp., a Delaware corporation with its principal place of business in Chicago, Illinois. Consequently, Tradebe is a citizen of the State of Delaware and of the State of Illinois.

5. Indian Harbor is a North Dakota corporation with its principal place of business in Stamford, Connecticut. Consequently, Indian Harbor is a citizen of the State of North Dakota and a citizen of the State of Connecticut.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is a complete diversity of citizenship between the parties, as Plaintiff Tradebe is a citizen of the State of Illinois and the State of Delaware, Defendant Indian Harbor is a citizen of the State of North Dakota and the State of Connecticut, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. This dispute concerns an insurance contract that was negotiated in Illinois and delivered to Tradebe at its office in Chicago, Illinois, affording insurance coverage for the properties at which Tradebe conducts its operations throughout the United States. Consequently, venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) as a substantial part of the events and omissions giving rise to the claims that are the subject of this litigation occurred within this judicial district.

**FACTS COMMON TO ALL COUNTS**

8. On or about June 1, 2023, Indian Harbor issued a renewal of an all-risk commercial property insurance policy, Policy Number US00128761PR23A to Tradebe (the "Policy"). A true and correct copy of the Policy is attached as **Exhibit 1**.

9. Tradebe is the named insured under the Policy.

10. The Policy provides insurance coverage to Tradebe for the period commencing April 1, 2023 and running through December 31, 2023.

11. On December 29, 2023, an explosion and fire occurred at the Bridgeport Facility that caused direct physical damage to and loss of property at the Bridgeport Facility (the "Accident"). The Accident resulted in the immediate cessation of all operations at the Bridgeport Facility for more than one year following the Accident.

12. Subject to its terms, conditions, exclusions, and limitations, the Policy provides coverage "against risks of direct physical loss or damage to Insured Property at Insured Locations provided such direct physical loss or damage to Insured Property occurs during the **POLICY PERIOD** and within the **POLICY TERRITORY**."

13. The Policy provides "Extra Expense" coverage.

14. "Extra Expense," as used in the Policy, includes expenses above what normally would have been incurred by the Insured to temporarily continue as nearly normal as practicable the conduct of the Insured's business following insured physical loss or damage less any value remaining at the end of the period of indemnity for property obtained in connection with this extra expense. Additionally, "Extra Expense" as used in the Policy includes the extra costs of temporarily using property or facilities of the Insured or others, less any value remaining at the end of the period of indemnity for property obtained in connection with this extra expense.

15. The Policy provides coverage for losses arising from decontamination where the contamination is caused by a covered occurrence. The Policy provides coverage for direct physical loss or damage to insured property at the insured locations caused by the actual presence of contaminants in or on the property resulting from a covered occurrence, as well as the costs incurred by the insured to clean-up or remove contaminants to satisfy the minimum requirements of any applicable law or ordinance.

16. The Policy provides coverage for business interruption resulting from a covered occurrence.

17. "Insured Property" includes a property within the policy territory that is covered as a Miscellaneous Unnamed Location.

18. The "Policy Territory" for the purposes of the Policy is property within the 50 states comprising the United States of America, its territories and possessions, the Commonwealth of Puerto Rico, and the District of Columbia.

19. The Bridgeport Facility is insured under the Policy as a "Miscellaneous Unnamed Location" as that phrase is defined in the Policy.

20. The Policy provides that the law applicable to the construction of the Policy is Indiana law.

21. The Policy provides that Miscellaneous Unnamed Locations including the Bridgeport Facility are subject to a sublimit of coverage of $1,000,000 "up to $10,000,000 excluding Earth Movement, Flood and Named Storm."

22. By endorsement, the Policy provides "In the event the Company participates with other insurers in one or more layers excess of the deductible, the maximum amount the Company

shall pay per "occurrence" is limited to the Company's share of each successive layer shown in the chart below."

23. Pursuant to the terms of the "Participation Endorsement," Indian Harbor's share is limited to 60% only if other insurers participate in the $25,000,000 layer excess of any applicable deductible.

24. No insurers in addition to Indian Harbor participated the layers of coverage excess the initial deductible.

25. Pursuant to endorsement, the Policy is governed by Indiana law.

26. The Accident at the Bridgeport Facility caused direct physical loss and damage to the Bridgeport Facility. Tradebe was required to immediately discontinue operations at the Bridgeport Facility until the physical loss and damage resulting from the explosion could be repaired, remediated, and decontaminated and the State of Connecticut allowed permitted activities to resume.

27. Following the Accident, Tradebe timely tendered a claim to Indian Harbor for the losses that it incurred resulting from the occurrence including claims for the business interruption that was caused by the occurrence.

28. Indian Harbor engaged J.S. Held as Indian Harbor's agent to investigate Tradebe's claim for the loss resulting from the Accident.

29. Tradebe cooperated in the investigation of the claim that it presented to Indian Harbor arising from the Accident at the Bridgeport Facility and provided the information requested of it by Indian Harbor and its agent, J.S. Held.

30. In early July 2025, J.S. Held advised that it had completed its investigation of Tradebe's claims arising from the Accident at the Bridgeport Facility. At that time, J.S. Held provided its evaluation of the loss incurred by Tradebe as a consequence of the Accident.

31. In its July 2025 communications to Tradebe, J.S. Held advised that it did not complete the analysis of Tradebe's claim and the evaluation of the evidence of loss submitted to it because it had been directed by Indian Harbor that the damages claimed exceeded what it had been told were the limits of the coverage available to Tradebe.

32. In July 2025, J.S. Held communicated to Tradebe that it was Indian Harbor's position that the sublimit applicable to the Bridgeport Facility was $1,000,000. J.S. Held, holding itself out as Indian Harbor's agent, also advised that Indian Harbor had communicated to it that the amount of loss for which the insurer was responsible was further limited to 60% of the sublimit applicable to the Bridgeport Facility.

33. Neither J.S. Held nor Indian Harbor has completed a full analysis of Tradebe's claim or evidence of loss relating to the Accident. Instead, Indian Harbor limited the scope of the investigation and represented to Tradebe that it was entitled to payment of $600,000.

34. Indian Harbor, through its agent, tendered a proof of loss for Tradebe's execution as a condition of receiving payment which purported to limit the "cash value" of the claim arising from the Accident to $600,000 (the "Proof of Loss").

35. Although Tradebe tendered its claim arising from the December 29, 2023 occurrence on a timely basis, Indian Harbor, itself, has not yet communicated its coverage position other than indirectly through J.S. Held. Indian Harbor, itself, has not yet formally communicated its coverage position concerning Tradebe's December 29, 2023 claim to Tradebe.

## **COUNT I – BREACH OF CONTRACT**

36. Tradebe reincorporates the allegations of paragraphs 1-35 as the allegations of this paragraph.

37. The December 29, 2023 Accident occurrence at the Bridgeport Facility caused direct physical loss or damage to property at the Bridgeport Facility, Decontamination costs, Extra Expense, and Business Interruption losses in excess of the amount proffered in the Proof of Loss as the "cash value" due to Tradebe in connection with its claim arising from the Accident.

38. Since the Bridgeport Facility is insured as a Miscellaneous Unnamed Location, the sublimit of coverage available to Tradebe for the December 29, 2023 Accident at the Bridgeport Facility was $10,000,000.

39. J.S. Held, at the direction of Indian Harbor, terminated its analysis and evaluation of the loss incurred by Tradebe arising from the December 29, 2023 Accident at the Bridgeport Facility once J.S. Held found at least $1,000,000 in damages.

40. However, since the location at which the occurrence took place is insured as a Miscellaneous Unnamed Location, the applicable sublimit is $10,000,000 and not $1,000,000.

41. No insurer other than Indian Harbor participated in the coverage afforded under the Policy.

42. The Policy, as amended by endorsement, did not limit Indian Harbor's share of responsibility for the losses to 60% of the amount of covered loss incurred by Tradebe.

43. Nonetheless, J.S. Held, at the direction of Indian Harbor, notified Tradebe that it was only entitled to 60% of the amount of the loss as determined by the insurer in the adjustment of the claim.

44. Thus, while Tradebe incurred loss in excess of the amount of the cash value of its claim identified in the Proof of Loss, J.S. Held, at Indian Harbor's direction, notified Tradebe that it was entitled to indemnification for the loss arising from the December 29, 2023 Accident limited to $600,000.

45. Tradebe has met its obligations under the Policy.

46. Tradebe has provided documentation of extra expense, decontamination costs, and business interruption costs incurred within the Period of Indemnity defined in the Policy that support its claim for indemnification of an amount in excess of the amount identified as due to it in the Proof of Loss.

47. Indian Harbor admits, through the Proof of Loss that it caused to be tendered to Tradebe, that the December 29, 2023 Accident at the Bridgeport Facility is an occurrence covered by the Policy.

48. However, Indian Harbor breached its contractual obligations to Tradebe by refusing to indemnify Tradebe for the full value of the extra expenses, decontamination costs, and business interruption supported by the documentation produced by Tradebe.

Wherefore, Tradebe seeks entry of judgment in its favor and against Indian Harbor in an amount to be proven at trial, such amount being in excess of $1,000,000 and up to the $10,000,000 sublimit of coverage, and such other relief as this Court deems just.

### COUNT II- BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

49. Tradebe reincorporates the allegations of paragraphs 1-35 as the allegations of this paragraph.

50. Indian Harbor admits that the December 29, 2023 Accident at the Bridgeport Facility is an occurrence covered by the Policy.

51. However, although more than a year has passed since Tradebe tendered its claim arising from the December 29, 2023 Accident at the Bridgeport Facility, Indian Harbor has not yet communicated a formal coverage position concerning Tradebe's claim arising from that occurrence.

52. Instead, J.S. Held, at the direction of Indian Harbor, terminated its investigation and analysis of the loss incurred by Tradebe resulting from the December 29, 2023 Accident at the Bridgeport Facility once it found support for loss aggregating at least $1,000,000.

53. However, since the Bridgeport Facility is insured as a Miscellaneous Unnamed Location, the applicable sublimit is $10,000,000 and not $1,000,000.

54. Despite the fact that Tradebe cooperated fully in the investigation of the damages that it incurred caused by and arising from the December 29, 2023 Accident at the Bridgeport Facility, Indian Harbor terminated its investigation and analysis of the claim and communicated that the insurance coverage payable to Tradebe was limited to $600,000.

55. Specifically, Indian Harbor, through J.S. Held, misrepresented to Tradebe that its coverage for the Bridgeport Facility was subject to a sublimit of $1,000,000 and that Indian Harbor's obligation under the Policy was limited to payment of 60% of that sublimit.

56. By failing to fully investigate and analyze the amount of loss incurred by Tradebe as a result of the December 29, 2023 Accident, Indian Harbor breached its duty of good faith and fair dealing owed to Tradebe under the Policy.

57. By misrepresenting the amount of coverage available to Tradebe under the Policy in connection with the claim arising from the December 29, 2023 Accident, Indian Harbor breached its duty of good faith and fair dealing owed by it to Tradebe.

58. Through its delay in the investigation and evaluation of the claim tendered by Tradebe in connection with the December 29, 2023 Accident at the Bridgeport Facility, Indian Harbor breached its duty of good faith and fair dealing to Tradebe.

59. As a consequence of Indian Harbor's breach of its duty of good faith and fair dealing, Tradebe has been required to incur the costs of bringing suit to enforce its rights owed to it under the Policy.

WHEREFORE, Tradebe asks for entry of an award of damages resulting from Indian Harbor's breach of its duty of good faith and fair dealing including punitive damages, the reasonable attorneys' fees and costs incurred by Tradebe to enforce its rights under the Policy, and such other relief as this Court deems just.

JURY DEMANDED.

Dated: October 17, 2025

TRADEBE ENVIRONMENTAL SERVICES, LLC

By: /s/ David B. Goodman
One of its attorneys

David B. Goodman – dg@glgchicago.com
  ARDC No. 6201242
Goodman Law Group | Chicago
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
Tel: (312) 626-1888